UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS HARDEN,

                    Plaintiff,         Civil Action No. 19-11753
v.                                        Honorable Denise Paige Hood
                                                        Magistrate Judge David R. Grand

CROSS, *et al.*,

                    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
CLARK'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16)**

Plaintiff Travis Harden ("Harden"), who currently is incarcerated at the Department of Corrections ("MDOC") Macomb Correctional Facility ("MRF"), appears *pro se* in this matter, which he commenced on June 12, 2019. In his complaint, Harden alleges violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against numerous defendants whom he alleges engaged in retaliatory conduct – conspiring to cover up false misconduct reports, denying him access to the Prison Legal Writer Program, depriving him of access to the Court, and making false referrals resulting in facility transfer – based on his race and the fact that he suffers from mental illness. (ECF No. 1.) On February 4, 2020, Defendant Melanie Clark, M.D. ("Dr. Clark"), filed a Motion for Summary Judgment alleging that Harden failed to exhaust his administrative remedies against her. (ECF No. 16.) Harden responded to the motion, (ECF No. 22), and Dr. Clark filed a reply brief (ECF No. 25).

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Dr. Clark's motion for summary judgment (ECF No. 16) be **GRANTED**.

**II.     REPORT**

    **A.     BACKGROUND**

As set forth above, Harden brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights. (ECF No. 1.) Defendant Clark was employed as psychiatrist in the Correctional Mental Health Program ("CMHP") at MRF during the time in question. (ECF No. 1, PageID.8.) In his complaint, Harden alleges that after he was transferred to MRF, Clark conspired with Defendant Cross, a Corrections Officer at his prior facility, (*Id.,* PageID.6), to deny Harden access to the Court in retaliation for filing a grievance against Cross and because he is Black and suffers from mental illness. (*Id.*, PageID.8.) Specifically, Harden asserts that on November 14, 2017, Clark denied him access to the Prison Legal Writer Program which "prevented [him] from pursuing an appeal in the Circuit Court" for a finding of misconduct by a MDOC Hearing Officer. (*Id.*, PageID.13.)[1]

Clark now moves for summary judgment on Harden's claims against her, arguing that he failed to properly exhaust his administrative remedies before filing the instant lawsuit.

    **B.  Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] In his complaint, Harden also alleges that he was "paneled" by Dr. Clark, which resulted in his medication being increased without his consent. (ECF No. 1, PageID.12.) Harden filed a grievance against Dr. Clark for this action (MRF-17-11-1682-12B) ("Grievance 1682"), but it does not relate to the issues in this case. Regardless, this grievance was not fully exhausted, as discussed in greater detail. *See infra* at 5 n. 3.

248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. ANALYSIS

In her motion, Clark argues that summary judgment is warranted on Harden's claims against her because Harden failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 16.) For the reasons set forth below, the Court agrees.

*The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have

3

been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 16-2, PageID.116.) A state prisoner must first complete the process outlined in the Policy—including pursuing a grievance through "all three steps of the grievance process"—before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.*, ¶B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.*, ¶¶P, V). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.*, ¶BB.) If the grievant is dissatisfied with, or does not receive, a Step II

4

response, he has ten business days within which to file a final appeal at Step III. (*Id.*, ¶FF.) Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.*, ¶B.)

### *Harden Failed to Raise a Material Question of Fact as to Whether He Properly Exhausted His Grievance Against Dr. Clark*

In her motion, Dr. Clark argues that Harden did not properly exhaust his claims against her because there were only two grievances filed by Harden that named Clark,[2] and both were rejected as untimely at Step III, and only one relates to his current complaints against Clark. (ECF No. 16, PageID.87; 90-91.)[3]

Harden asserts that after his transfer to MRF, he spoke to Dr. Clark and his Case Manager about getting access to the Prison Legal Writer Program. Specifically, Harden wanted help filing an appeal with the Circuit Court related to a Hearing Officer's handling of a Misconduct Hearing. (ECF No. 1, PageID.13; ECF No. 16-1, PageID.98.) Harden's request was denied via a memo by Defendant Leach on November 14, 2017. (*Id.*) After being declared ineligible for the Legal Writer Program, Harden filed a Step I grievance against Clark and others on November 23, 2017 challenging that decision (Grievance No. MRF-17-11-1683-12B ("Grievance 1683")). (*Id.*) Grievance 1683 was denied at Step I, so Harden proceeded to filing a Step II appeal. (ECF No.

---

[2] The third grievance referenced in the motion, Grievance JCF-17-09-2241-12B3, was filed prior to Harden's transfer to MRF. (ECF No. 16-1, PageID.113.) In that Grievance, Harden alleges that he was forced by MDOC mental health employees to take medications, but he does not name Dr. Clark. (ECF No. 16, PageID.84.) This grievance is not relevant for the analysis of this motion; thus, it will not be discussed any further.

[3] As mentioned previously, there was an additional grievance filed by Harden against Clark, Grievance 1682. *See supra* at 2 n. 1. Grievance 1682 is not at issue in this case and was not properly exhausted in any event. In Grievance 1682, Harden asserts that after he was transferred to MRF on November 23, 2017, he started working with Dr. Clark who increased his meds without cause or consent. (*Id.*, PageID.280; ECF 16-1, PageID.105.) Harden does not raise this issue as a claim in his complaint. Moreover, Harden's Step III appeal for Grievance 1682 was rejected as untimely, and Harden does not challenge that determination. (*Id.*)

16-1, PageID.97-99.) Harden has proof that his Step II appeal for Grievance 1683 was received by the Grievance Coordinator, E. Taylor, on January 10, 2018. (*Id.*, PageID.101.) On January 10, 2018, Taylor sent a "Grievance Appeal Receipt – Step II" form to Harden advising him that the deadline for the MDOC to respond to his Step II appeal was February 1, 2018. (*Id.*) Harden alleges that he did not receive a response by the February 1, 2018 due date, which is corroborated by the fact that the "Step II Grievance Appeal Response" is dated February 7, 2018. (*Id.*, PageID.97; ECF No. 22, PageID.284.) That Response indicates that Harden's grievance was denied. (ECF No. 16-1, PageID.97.)

According to Harden, when he did not receive a response to his Step II appeal by the February 1, 2018 due date, rather than moving forward with a Step III appeal (as the Policy instructs), he kited Taylor. (ECF No. 22, PageID.279.) Harden claims that Taylor "returned my kite, stateing [sic] if I had not received [a] response by the due date I should go to Step III." (*Id.*)[4] Harden claims he did submit a Step III appeal, but not until April 6, 2018. (*Id.*)[5] Harden received the response to his Step III appeal, titled "Step III Grievance Response," dated May 10, 2018, which indicated that Harden's grievance was rejected as "untimely." (ECF No. 16-1, PageID.95.)

In response to Clark's summary judgment motion, Harden argues, "I filed my grievances on time, MDOC failure to respond on time should not be held against me, when I filed my grievances in a timely manner and exhausted my Administrative remedies per policy." (ECF No.

---

[4] As discussed herein, Taylor's instruction was no different than what the Policy expressly instructs an inmate to do when a grievance response is not timely received.

[5] Although Harden is somewhat vague about this date, it can be discerned from his other assertions. Harden asserts that on April 3, 2018, he "received a correspondence from the Office of Legal Affairs with an OLA record number #975198," and that "about three days later" he received the tardy Step II response. (ECF No. 22, PageID.279-80.) He further asserts that he "put that response in the mail, with the OLA Number that day about 4-6-2018. (*Id.*, PageID.280.) Finally, he asserts, "that was the first Step III [appeal] I sent after 2-1-2018." (*Id.*)

6

22, PageID.285.) The evidence, however, shows that Harden's Step III appeal was properly rejected as untimely and that he did not follow the Policy's instructions for proper exhaustion.

The United States Supreme Court has recently reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Black*, 136 S. Ct. 1850, 1858 (2016). Courts have recognized, in some circumstances, that "although completing Step III [of the grievance process] is a sufficient condition, it is not always a necessary one." *Palmore v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances.)

Here, Harden has not raised a material question of fact as to whether the grievance process was "unavailable" to him. For Grievance 1683, he was provided a Step I grievance form and the Step I process was completed. (ECF No. 16-1, PageID.98-99.) He then submitted a Step II appeal and received a receipt. (*Id.*, PageID.100-01). The Step II appeal receipt indicated that the MDOC's response to Harden's Step II appeal was due on or before February 1, 2018. (*Id.*, PageID.101.) Yet, Harden did not file his Step III appeal until April 6, 2018. Harden now argues that the MDOC's failure to respond on time went against the Policy, and that this made the grievance process "unavailable" to him such that his tardy Step III appeal should be excused. (ECF No. 22, PageID.285.) This argument lacks merit.

Contrary to Harden's argument, Grievance Coordinator E. Taylor's failure to send a response by the February 1, 2018 deadline did not render the grievance process "unavailable" to

Harden. Indeed, the Policy specifically contemplates that an inmate may not receive a grievance response by the deadline, and specifically instructs him how to proceed in such a case:

> Step III
>
> FF. **A grievant may file a Step III grievance if s/he** is dissatisfied with the Step II response or **does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance**, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response **or, if no response was received, within ten business days after the date the response was due,** including any extensions.

(ECF No. 16-2, PageID.121, ¶FF.)

This provision of the Policy makes it clear that Harden was required to have submitted the Step III appeal form within ten business days of the February 1, 2018 due date for the MDOC's Step II response to Grievance 1683. By Harden's own admission, he submitted a Step III appeal of this grievance on April 6, 2018. (ECF No. 22, PageID.280.)  Thus, contrary to Harden's assertion, he did not submit a timely Step III appeal for the relevant grievance. (*Id.*, PageID.285.)

The case relied on by Harden does not change this analysis. In *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016), the plaintiff did not dispute that he failed to proceed through the typical administrative remedy process. He argued, as Harden does here, that the prison made proceeding through that traditional route unavailable to him. In rejecting the Fourth Circuit's unwritten "special circumstances" exception to the exhaustion requirement, the Court found that there is no common law exception that relieves an inmate of the obligation to fulfill the exhaustion requirement under the PLRA. A prisoner must exhaust all remedies that are available to him; however, a prisoner is not obliged to exhaust remedies that are unavailable. *Id*. at 1858. The *Ross* Court went on to state that, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers

unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859 (citing *Booth v. Churner*, 121 S. Ct. 1819 (2001).). Here, however, as explained above, the grievance respondent's failure to respond by February 1, 2018 did not create a "dead end" as to Harden's ability to properly exhaust Grievance 1683 under the Policy. Rather, the Policy specifically instructed Harden that in the event of a tardy grievance response, he had 10 business days from the response's due date to file his appeal. Harden's failure to adhere to that requirement was of his own making and shows that he failed to properly exhaust the relevant grievance.

Moreover, unlike the plaintiff in *Ross*, who established that the investigation into the wrongs against him had been removed from the traditional course of administrative remedies due to an internal investigation, Harden failed to establish that such circumstances existed to cause him to reasonably – though mistakenly – believe he had exhausted his remedies. Harden cannot unilaterally change the Policy's requirements by choosing not to follow them, and no official ever gave him an instruction that deviated from the Policy's requirements.

For all these reasons, Harden has not established a genuine issue of material fact as to whether the MDOC's grievance process was unavailable to him such that his failure to timely and properly exhaust his administrative remedies should be excused. Accordingly, Clark's motion for summary judgment on exhaustion grounds should be granted.

### CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Clark's Motion for Summary Judgment **(ECF No. 16)** be **GRANTED**.

Dated: July 10, 2020  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

9

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2020.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager