UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS HARDEN,

                     Plaintiff,        Civil Action No. 19-11753

v.                                  Honorable Denise Page Hood
                                    Magistrate Judge David R. Grand

CROSS, *et al.*,

                     Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 20) AND TO DENY PLAINTIFF'S MOTION "FOR AN EMERGENCY INJUNCTION" (ECF No. 52)

Plaintiff Travis Harden ("Harden"), who currently is incarcerated at the Michigan Department of Corrections' ("MDOC") Macomb Correctional Facility ("MRF"), appears *pro se* in this matter, which he commenced on June 12, 2019. (ECF No. 1.) In his complaint, Harden alleges violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Specifically, he claims that numerous defendants engaged in retaliatory conduct – conspiring to cover up false misconduct reports, denying him access to the Prison Legal Writer Program ("PLWP"), depriving him of access to the Court, and making false referrals resulting in facility transfer – based on his race and the fact that he suffers from mental illness. (*Id.*)

On February 24, 2020, Defendants Cross, Gordon, Salinas, Horton, Dr. Tolsma, Koszegi, and A. Taylor (collectively the "MDOC Defendants") filed a Motion for Summary Judgment alleging that Harden failed to exhaust his administrative remedies against them. (ECF No. 20.) Harden responded to the motion (ECF No. 34), and the MDOC Defendants filed a reply brief (ECF No. 42.) On August 15, 2020, Harden filed a "Motion for Emergency Injunction to Take Over My Medical Health Care." (ECF No. 52.) The MDOC Defendants filed a response to that motion on

September 11, 2020.  (ECF No. 54.)

Pursuant to 28 U.S.C. § 636(b), all pretrial matters in this action have been referred to the undersigned.  (ECF No. 12.)  Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment **(ECF No. 20)** be **GRANTED**.  **IT IS FURTHER RECOMMENDED** that Harden's "Motion for Emergency Injunction to Take Over My Medical Health Care" **(ECF No. 52)** be **DENIED**.

## II.    REPORT

### A.    Background

As set forth above, Harden brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights.  (ECF No. 1.)  During the time of the events at issue in this case, Harden resided at three different prisons: G. Robert Cotton Correctional Facility ("JCF"), Woodland Correctional Facility ("WCC"), and Macomb Correctional Facility ("MRF").  (*Id.*)  At JCF, during all relevant times, Defendants Mark Cross ("Cross") and Karen Horton ("Horton") were employed as Corrections Officers (*Id.*, PageID.6-7); Defendant Greg Gordon ("Gordon") was employed as Corrections Sergeant and shift supervisor (*Id.*, PageID.6); Defendant Joel Salinas ("Salinas") was employed as Hearings Investigator (*Id.*); Defendant Kevin Tolsma, M.D. ("Dr. Tolsma") was employed as a Psychiatrist for the Correctional Mental Health Program ("CMHP") (*Id.*, PageID.7); and Defendant Aron Koszegi

("Koszegi") was employed as Case Manager in the CMHP.  (*Id.*, PageID.8.)  At MRF, during all relevant times, Defendant Alfred Taylor ("Taylor") was employed as a Case Manager in the CMHP.  (*Id.*)

The claims in Harden's complaint center around two main issues: (1) his receipt of an allegedly "false misconduct ticket" while housed at JCF, and (2) the denial of Harden's entry into the PLWP, which occurred at the end of his time at JCF, and the grievance he filed regarding that denial, which was processed through Harden's time at WCC and MRF.  (ECF No. 1.)  Harden alleges that these actions were taken against him in retaliation for his filing a prior grievance against Cross and because he is black and suffers from mental illness.  (*Id.*, PageID.11.)

Specifically, Harden asserts that between July 21, 2017 and October 31, 2017, Cross, Horton, Gordon, and Salinas conspired to retaliate against him for submitting a grievance against Cross.  (*Id.*, PageID.10-11.)  This conspiracy allegedly took the form of issuing a false misconduct ticket, "purposely [leaving] C/O Horton's name off the ticket," changing the dates on the ticket, and denying a rehearing after he was found guilty.[1]  (*Id.*)  Additionally, Harden alleges that, on September 13, 2017, he was informed that he was not eligible for the PLWP, in an attempt to deny him access to the court to pursue an appeal of his August 2017 misconduct hearing because he is black and mentally ill.  (*Id.*, PageID.12.)

The MDOC Defendants now move for summary judgment on Harden's claims against them, arguing that he failed to properly exhaust his administrative remedies before filing the instant lawsuit.  While the MDOC Defendants' summary judgment motion was pending, Harden filed a

---

[1] On April 17, 2020, Harden filed a "Motion Asking Court to Deny Preclusive Effect to Hearing Officer Finding of Guilty [sic]."  (ECF No. 35.)  Because the hearing officer's guilty finding on the misconduct ticket issued to Harden is not relevant to the underlying issue before the Court, the Court will issue a separate Order denying that motion.

"Motion for Emergency Injunction to Take Over My Medical Health Care."   (ECF No. 52.)
Harden asserts that he was recently paroled "to King Living managed by Dian Brown," and that
he has not been getting certain of his medications.   Thus, he asks the Court to enter an order
allowing him to "take over [his] health care."   (*Id.*, PageID.570.)

       **B.**     **Standard of Review**

            *1.*    *Summary Judgment*

      Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if
"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't
of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect
the outcome of the case under governing law.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the
truth of the non-moving party's evidence and construes all reasonable inferences from that
evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d
461, 464 (6th Cir. 2006).

      The party seeking summary judgment bears the initial burden of informing the Court of the
basis for its motion and must identify particular portions of the record that demonstrate the absence
of a genuine dispute as to any material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325
(1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party
satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a
triable issue.'"   *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a
summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the

hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

2.    *Preliminary Injunction*

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 505 U.S. 7, 22 (2008).  To succeed on a request for a preliminary injunction, Harden is required to establish:  "(1) a strong likelihood of success on the merits; (2) that he is likely to suffer irreparable harm without an injunction; (3) that the injunction would not cause substantial harm to others; and (4) that the injunction is in the public interest." *See CLT Logistics v. River West Brands*, 777 F.Supp.2d 1052, 1064 (E.D. Mich. 2011) (citing *Winter*, 505 U.S. at 22; *ACLU of Ky. v. McCreary County, Ky.*, 354 F.3d 348, 445 (6th Cir. 2003)).  Although the Court must balance these factors, the movant's failure to establish a likelihood of success on the merits or irreparable harm is usually fatal.  *Id.*  A preliminary injunction should be granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.*

C.    **Analysis**

1.    *MDOC Defendants' Summary Judgment Motion*

In their motion, the MDOC Defendants argue that they are entitled to summary judgment on Harden's claims against them because Harden failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (ECF No. 20.)  For the reasons set forth below, the Court agrees.

a.    *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action "under [§ 1983] or any other Federal

5

law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### b. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 20-2.) A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.*, ¶ B.) The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.*, ¶¶ P, V.) If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.

6

(*Id.*, ¶ BB.)  If the prisoner is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id.*, ¶ FF.)  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.*, ¶ B.)

> c.    *Harden Failed to Raise a Material Question of*
> *Fact as to Whether He Properly Exhausted His*
> *Grievance Against the MDOC Defendants*

Attached as an exhibit to the MDOC Defendants' summary judgment motion is Harden's Step III Grievance Report.  (ECF No. 20-3.)  The chart below outlines the topic, status, and relevance of the five grievances in which the MDOC Defendants are named.

| Grievance ID | Topic | Named Defendant(s) | Status | Exhausted? | Relevant? |
|---|---|---|---|---|---|
| **MRF-17-11-1683-12B** | Denial of PLWP at MRF | Taylor | Denied at Steps I and II; rejected at III as untimely | No | Yes |
| **JCF-17-07-1824-27A** | Officer Lied on Misconduct Ticket | Cross, Gordon | Rejected at Step I as a non-grievable issue; upheld through III | No | Yes |
| MRF-17-11-1682-28E | Medication Adjustment | Taylor | Denied at Steps I and II; rejected at III as untimely | No | No |
| JCF-17-09-2241-28E | Medicated Against His Will[2] | Tolsma, Koszegi | Denied at Step I; rejected at II | No | No |

----

[2] In his Step I grievance, Harden states, in relevant part: "I've been in prison for 21 year[s.]  I have been forced by M.D.O.C. profishuals [sic] to take mediction [sic] .…  MHP Tolsma, Psychologist Koszegi, and Dr. Olken has conspriered [sic] with the staff at JCF, in retalaieiation [sic], because of Grievances, and pending Ledigation [sic] in Court for this continual herassment [sic], and retalaieiation [sic]."  (ECF No. 20-3, PageID.205.)  Although Harden was transferred to WCC before he could be interviewed with respect to this grievance, his mental health record was reviewed, and

| | | | as untimely; upheld at III | | |
|---|---|---|---|---|---|
| JCF-17-08-1984-7A | At Hearing for the Removal of a TV, the TV was Not Present | Horton | Denied at Step I; upheld through III | Yes | No |

In their motion, the MDOC Defendants argue that Harden did not properly exhaust his claims against them. Specifically, they argue that only two of the five grievances against them (bolded above) are relevant to the issues in the complaint: Grievance MRF-17-11-1683-12B ("Grievance 1683") and Grievance JCF-17-07-1824-27A ("Grievance 1824"). (ECF No. 20, PageID.152-53.) Furthermore, the MDOC Defendants allege that Grievance 1683 was not properly exhausted because it was untimely and Grievance 1824 was not properly exhausted because it raised a non-grievable issue, and that the Grievances were rejected for those respective reasons. (*Id.*)

As shown herein, the only MDOC Defendants named in the two relevant Grievances (1683 and 1824) are Cross, Gordon, and Taylor. According to the Policy, for a prisoner to properly exhaust a grievance, the names of the relevant parties must be included in the Step I grievance form. (ECF No. 20-2, PageID.172.) Specifically, the Policy provides, in pertinent part:

> R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; . . . The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places**

---

no wrongdoing was uncovered; thus, this grievance was denied at Step I. (*Id.*, PageID.206.) Harden then filed a Step II appeal, in which he shifted gears entirely and accused Dr. Tolsma and Koszegi of denying him access to a legal writer. (*Id.*, PageID.207.) Courts have recognized, however, that pursuant to the Policy, in order to properly exhaust, a prisoner must raise each of his claims for the first time at Step I of the grievance procedure. *See, e.g., Owens v. Simon,* No. 1:05-CV-733, 2005 WL 3107732, at *2 (W.D. Mich. Nov. 18, 2005). Thus, Harden cannot argue that this grievance exhausted a claim that Dr. Tolsma and Koszegi denied him access to PLWP.

> **and names of all those involved in the issue being grieved are to be included.**

(*Id.*, ¶ R.) (emphasis added).  Harden has failed to provide any evidence supporting his claim that he successfully exhausted his administrative remedies against the MDOC Defendants whose names were not included in the two relevant grievances – Salinas, Horton, Dr. Tolsma, and Koszegi.  Because none of the other grievances naming these individuals are relevant to the specific claims Harden brings in this case, the MDOC Defendants' motion for summary judgment should be granted as to Salinas, Horton, Dr. Tolsma, and Koszegi.  The remainder of this Report and Recommendation will focus on the two relevant Grievances (1683 and 1824) and the three MDOC defendants named therein – Cross, Gordon, and Taylor.

*i.      The Misconduct Ticket*

In his complaint, Harden avers that, on July 18, 2017, after Cross and another Corrections Officer made rounds, Harden asked to use the bathroom.  (ECF No. 1, PageID.10.)  Harden alleges that his request was denied.  (*Id.*)  Harden then filed a grievance against Cross for denying his request to use the bathroom – Grievance JCF-2017-07-1705-17I ("Grievance 1705").  (*Id.*)  On July 21, 2017, Harden attempted to talk to Cross about an unrelated issue and, allegedly, Cross "started talking about what happened on the 18th." (*Id.*)  Harden asserts that shortly after speaking to Cross, he went back to his cube and was then "cuffed and taken to the hole, for threatening behavior."  (*Id.*)  In his complaint, Harden avers that he never was threatening; rather, the misconduct ticket that Cross issued him for such alleged threatening behavior was "in retaliation for [Grievance 1705]…."  (*Id.*)  Harden further alleges that this misconduct ticket was reviewed by Gordon on July 21, 2017.  (*Id.*, PageID.11.)  According to Harden, Gordon "purposely left C/O Horton's name off the ticket in a conspiracy to find [him] guilty of this threatening behavior, in part because of retaliation and in part because [he is] Black and Mentally Ill."  (*Id.*)

9

As a result, Harden filed a Step I grievance – Grievance 1824 – against Cross and Gordon on July 27, 2017 challenging the issuance of the misconduct ticket.  (ECF No. 20-3, PageID.211.) Grievance 1824 was rejected at all three steps on the ground that challenges to the issuance of a misconduct ticket, and decisions made by a hearing officer or related to the misconduct hearing process, cannot be challenged through the prison grievance process.[3]  (*Id.*, PageID.208-09, 212-14.)  Indeed, Harden was advised that if he was not satisfied with the outcome of the misconduct hearing, he "must follow the appeal process."  (*Id.*, PageID.212.)

A review of Harden's misconduct packet indicates that Cross issued the misconduct ticket after Harden told him, "if you're [sic] ARUS supervisor [Morris] deny [sic] me to talk to him again, I'm going to hit him in his head!"  (ECF No. 20-4, PageID.230.)  Prior to the misconduct hearing, Officer Horton responded to Hearing Investigator Salinas' request for information and corroborated Cross' statement that Harden threatened Morris.  (*Id.*, PageID.237.)  During the misconduct hearing, Harden did not answer the hearing officer's questions regarding the conversation he had with Cross, "other than to state, 'I didn't mean that.'"  (*Id.*, PageID.229.)  As a result, on August 1, 2017, Harden was found guilty by a hearing officer.[4]  (ECF No. 1, PageID.11.)  At no time during the misconduct hearing did Harden allege that Cross issued the ticket for retaliatory purposes.  (*Id.*, PageID.228-29, 234-35.)  This necessarily means that Harden did not properly exhaust this particular retaliation claim.

As the MDOC Defendants correctly argue (ECF No. 20, PageID.163), Harden failed to exhaust his administrative remedies with respect to the allegedly retaliatory misconduct ticket

---

[3] Pursuant to the Policy, matters regarding "decisions made in hearings conducted by hearing officers" are non-grievable and, therefore, cannot be exhausted through the prison grievance process.  (ECF No. 20-2, PageID.170, ¶ (F)(2).)

[4] Harden requested a rehearing for his misconduct ticket on August 17, 2017.  (ECF No. 1, PageID.11.)  This request was denied on October 31, 2017.  (*Id.*)

because the proper method to contest such a misconduct ticket is not by filing a grievance – as Harden did here – but by raising the issue first at the misconduct hearing, and then pursuing an administrative appeal.  *See, e.g., Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019) ("a prisoner must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing") (citing *Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011)); *see also Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (finding claim that the defendant wrote retaliatory misconduct ticket was not properly exhausted because the plaintiff failed to raise the retaliation claim at the misconduct hearing and did not appeal the finding of guilt following the hearing as required by MDOC PD 03.03.150, which is the sole avenue for such appeal); *Smith v. Goulet*, No. 1:17-CV-618, 2018 WL 3688468, at *2 (W.D. Mich., Aug. 3, 2018) ("the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing"); *Miller v. Klee*, No. 17-11006, 2018 WL 1354473, at *5 (E.D. Mich., Feb. 23, 2018) ("a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies").

Here, the misconduct packet clearly demonstrates that Harden failed to allege retaliation at the misconduct hearing.  (ECF No. 20-4).  In response to the MDOC Defendants' motion, Harden argues that his administrative remedies were exhausted because "[n]ot only did [he] put in a request for rehearing, [he] appealed all the way to the State Supreme Court."  (*Id.*, PageID.440.)  As set forth above, however, this argument lacks merit.  Even if Harden had brought forth allegations of retaliation at the rehearing stage – which he does not assert – such would be insufficient.  *See Carr v. Booker,* No. 12-15074, 2014 WL 409026, at *5 (E.D. Mich. Feb. 3, 2014)

11

(where prisoner did not argue that receipt of misconduct ticket was based on retaliation during first misconduct hearing, *Siggers* precludes him from using such a claim as a basis to request a rehearing).  Thus, there is no genuine issue of material fact that Harden failed to exhaust his administrative remedies as to his claims against Cross and Gordon regarding the allegedly retaliatory misconduct ticket.  Accordingly, summary judgment is appropriate as to that claim.

### ii. *Prisoner Legal Writer Program Denial*

Harden also asserts that on September 13, 2017, he was informed – third hand – that he was not eligible for the PLWP.  (ECF No.1, PageID.11.)  Harden traced this information back to his Case Manager at the time, Koszegi.  (*Id.*)  Accordingly, Harden made an appointment to discuss the PLWP with Koszegi on September 19, 2017.  (*Id.*, PageID.11-12.)  Harden avers that, following this meeting, Koszegi made a "referral" for Harden (presumably for some sort of mental health treatment) because he allegedly "decompensated in his office that day, which is false." (*Id.*, PageID.12.)  Harden further argues that this referral was made in retaliation with JCF Staff,[5] and because Harden is black.  (*Id.*)  This referral resulted in Harden being transferred to WCC (which, according to Harden, is the "MDOC's [] Mental Health Programs Acute Care Hospital"), and then to MRF.  (*Id.*)

After his transfer to MRF, Harden spoke to his Psychiatrist and his Case Manager, Taylor, about getting access to the PLWP.[6]  Harden's request was denied via a memo by the librarian on November 14, 2017.  (ECF No. 20-3, PageID.190.)  After being declared ineligible for the PLWP, Harden filed a Step I grievance on November 23, 2017, challenging that decision (Grievance

---

[5] In his complaint, Harden repeatedly alleges that the actions taken by MDOC Defendants were done "in retaliation."  (ECF No. 1, PageID.6-9, 11-12.)  Though not expressly stated, it can be assumed that Harden means in retaliation for filing Grievance 1705 against Cross.

[6] Specifically, Harden wanted help filing an appeal related to the misconduct hearing at JCF.  (ECF No. 1, PageID.13; ECF No. 20-3, PageID.190.)

1683).[7]  (*Id.*)  The only MDOC Defendant named in Grievance 1683 was Taylor.  (*Id.*)  Grievance

1683 was denied at Step I, so Harden filed a Step II appeal.  (ECF No. 20-3, PageID.188, 191.)

Harden has proof that his Step II appeal for Grievance 1683 was received by MRF's Grievance

Coordinator on January 10, 2018.  (*Id.*, PageID.193.)   On January 10, 2018, the Grievance

Coordinator sent a "Grievance Appeal Receipt – Step II" form to Harden advising him that the

deadline for the MDOC to respond to his Step II appeal was February 1, 2018.  (*Id.*)  However,

Harden did not receive a response until February 7, 2018.  (*Id.*, PageID.189.)  That response, titled

"Step II Grievance Appeal Response" is dated February 7, 2018, and indicates that Harden's

grievance was denied.  (*Id.*)

According to Harden, when he did not receive a response to his Step II appeal by the

February 1, 2018 due date, rather than moving forward with a Step III appeal (as the Policy

instructs), he kited the Grievance Coordinator.  (ECF No. 22, PageID.279.)  Harden claims that

the Grievance Coordinator "returned my kite, stateing [sic] if I had not received [a] response by

the due date I should go to Step III."  (*Id.*)[8]  Harden claims he did submit a Step III appeal, but not

until April 6, 2018.  (*Id.*)[9]  Harden received the response to his Step III appeal, titled "Step III

---

[7] With respect to this issue, Harden's response to the MDOC Defendants' motion simply referred the Court to his response brief to Defendant Clark's motion for summary judgment, ECF No. 20. (ECF No. 34, PageID.440-41.)  Most of the timeline and facts surrounding Grievance 1683 are taken from ECF No. 20, not from Harden's response to the instant motion.

[8] As discussed herein, the Grievance Coordinator's instruction was no different than what the Policy expressly instructs an inmate to do when a grievance response is not timely received.

[9] Although Harden does not specifically identify this date, it can be discerned from his other assertions in his response to Clark's Motion for Summary Judgment.  (ECF No. 22.)  Harden asserts that on April 3, 2018 he "received a correspondence from the Office of Legal Affairs with an OLA record number #975198," and that "about three days later" he received the tardy Step II response.  (*Id.*, PageID.279-80.)  He further asserts that he "put that response in the mail, with the OLA Number that day about 4-6-2018.  (*Id.*, PageID.280.)  Finally, he asserts, "that was the first Step III [appeal] I sent after 2-1-2018."  (*Id.*)

Grievance Response," dated May 10, 2018, which indicates that Harden's grievance appeal was rejected as "untimely." (ECF No. 20-3, PageID.187.) The MDOC Defendants argue that these facts establish Harden's failure to properly exhaust his grievance, and the Court agrees.

First, the only grievance relevant to Harden's claims regarding the PLWP denial is Grievance 1683, and the only MDOC Defendant named in that grievance is Taylor. (ECF No. 20-3, PageID.190.) Thus, while Harden argues that he exhausted his administrative remedies as to Dr. Tolsma, Koszegi, and Taylor, the evidence demonstrates otherwise. Koszegi and Dr. Tolsma were not named in Grievance 1683. (*Id.*) According to the Policy, for a prisoner to properly exhaust a grievance, the names of the relevant parties must be included in the Step I grievance form. (ECF No. 20-2, PageID.172.) Because Harden did not name Koszegi or Dr. Tolsma in Grievance 1683, he did not properly exhaust his administrative remedies against them.

Harden also argues that he exhausted his administrative remedies as to Taylor. (ECF No. 34, PageID.440-41.) In support of this argument, Harden relies on his response to Clark's motion for summary judgment. (*Id*.) In his response to Clark's motion, Harden argues that, "MDOC failure to respond on time should not be held against me, when I filed my grievances in a timly [sic] manner and exhausted my Administrative remedies pur [sic] policy." (ECF No. 22, PageID.285.) The evidence, however, shows that Harden's Step III appeal of Grievance 1683 naming Taylor was properly rejected as untimely, and therefore, it did not exhaust his underlying claim.

The United States Supreme Court has recently reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Courts have recognized, in some circumstances, that "although completing Step III [of

14

the grievance process] is a sufficient condition, it is not always a necessary one." *Palmore v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances).

Here, Harden has not raised a material question of fact as to whether the grievance process was "unavailable" to him.  For Grievance 1683, he was provided a Step I grievance form, and the Step I process was completed.  (ECF No. 20-3, PageID.190-91.)  He then submitted a Step II appeal and received a receipt.  (*Id.*, PageID.188-89, 193.)  The Step II appeal receipt indicated that the MDOC's response to Harden's Step II appeal was due on or before February 1, 2018. (*Id.*, PageID.193.)  Yet, Harden did not file his Step III appeal until April 6, 2018.  (*Id.*, PageID.192.) Harden now argues that the MDOC's failure to interview him went against procedure, and that his transfer between facilities after Step I made the grievance process "unavailable" to him such that his tardy Step III appeal should be excused.  (ECF No. 22, PageID.285.)  This argument lacks merit.

Contrary to Harden's argument, the MDOC's failure to respond to Harden's Step II grievance by the February 1, 2018 deadline did not render the grievance process "unavailable" to Harden.  Indeed, the Policy specifically provides, in relevant part:

> Step III
>
> FF. **A grievant may file a Step III grievance if s/he** is dissatisfied with the Step II response or **does not receive a timely response.  To file a Step III grievance, the grievant must send a completed Step III grievance**, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response **or, if no response was received, within ten business days after the date the response was due,** including any extensions.

(ECF No. 20-2, PageID.174, ¶ FF.) (emphasis added).

This provision of the Policy makes clear that Harden was required to have submitted the Step III appeal form within ten business days of the February 1, 2018 due date for the MDOC's Step II response to Grievance 1683.  But, Harden admits he submitted his Step III appeal of this grievance on April 6, 2018, well past the ten-business-day deadline. (ECF No. 22, PageID.280.) Thus, contrary to Harden's assertion, he did not submit a timely Step III appeal for Grievance 1683.  (*Id.*, PageID.285.)

Harden relies on his response to Clark's motion for legal support for his argument against Taylor.  (ECF No. 34, PageID.441.)  The single case he relied on there, however – *Ross v. Blake*, 136 S. Ct. 1850 – does not change the analysis.  In *Ross*, the plaintiff did not dispute that he failed to proceed through the typical administrative remedy process.  He argued, as Harden does here, that the prison made proceeding through that traditional route unavailable to him.  In rejecting the Fourth Circuit's unwritten "special circumstances" exception to the exhaustion requirement, the Court found that there is no common law exception that relieves an inmate of the obligation to fulfill the exhaustion requirement under the PLRA.  A prisoner must exhaust all remedies that are available to him; however, he is not obliged to exhaust remedies that are unavailable.  *Id*. at 1858. The *Ross* court went on to state that, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at 1859. Here, however, as explained above, the MDOC's failure to respond by February 1, 2018, did not create a "dead end" as to Harden's ability to properly exhaust Grievance 1683 under the Policy. Rather, the Policy specifically instructed Harden that in the event of a tardy grievance response, he had ten business days from the response's due date to file his appeal.  Harden's failure to adhere

to that requirement was of his own making and establishes his failure to properly exhaust the grievance.

Moreover, unlike the plaintiff in *Ross*, who established that the investigation into the wrongs against him had been removed from the traditional course of administrative remedies due to an internal investigation, Harden failed to establish that such circumstances existed to cause him to reasonably – though mistakenly – believe he had exhausted all his remedies.  Harden cannot unilaterally change the Policy's requirements by choosing not to follow them, and no official ever gave him an instruction other than to simply restate the Policy's requirements.

For all of these reasons, Harden has not established a genuine issue of material fact as to whether the MDOC's grievance process was unavailable to him such that his failure to timely and properly exhaust his administrative remedies should be excused.  Accordingly, the MDOC Defendants' motion for summary judgment on exhaustion grounds should be granted as to all Defendants.[10]

---

[10] On July 2, 2020, Harden filed a Motion for Leave to Amend his Complaint.  (ECF No. 50.) Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a). But, the Court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile.  *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505 (6th Cir. 2010) (citation and internal quotations omitted).  Here, Harden's proposed amended complaint is improper because it seeks to add numerous defendants that do not pertain to any of his original claims.  Indeed, there is no connection between Harden's original claims (retaliatory misconduct ticket and removal from the PLWP) and many of the additional defendants (members of the Michigan Parole Board) and additional claims (conspiracy and due process violation by the parole board members) Harden seeks to add via an amended complaint.  Where Harden has failed to allege how his claims against the parole board members arose out of same series of events as his original claims, and how those claims share common questions of law or fact, denial of the proposed amendment is proper.  *See* Fed. R. Civ. P. 20(a)(2).  Thus, the Court will issue a separate Order denying Harden's Motion for Leave to Amend.

2. *Harden's Emergency Motion for Injunctive Relief*

On August 15, 2020, Harden filed a "Motion for Emergency Injunction to Take Over My Medical Health Care." (ECF No. 52.) Harden alleges that he was recently paroled to "King Living" and that a Dian Brown who manages that facility is "in charge of" his medications, but not providing them as needed. (*Id.*, PageID.568-69.) Harden seems to ask the Court to enter a preliminary injunction transferring the responsibility for obtaining his medications from Brown to Harden. (*Id.*) This motion lacks merit and should be denied.

First, Brown is not a party to this action, and the Court has no authority over her to enjoin her from taking any action, let alone from administering Harden's medications. Second, as with his proposed amended complaint, Harden's claims about the administration of his medications while he is on parole are wholly unrelated to the claims raised in his complaint. Thus, they are not properly before the Court as part of this action. Third, Harden has not shown a strong likelihood of success on the merits. *CLT Logistics*, 777 F. Supp. 2d at 1064. His entire filing consists of a few hand-written sentences and is unsupported by any evidence whatsoever. Accordingly, Harden has not shown entitlement to the relief he requests, and his emergency motion for injunctive relief should be denied.

## III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that MDOC Defendants' motion for summary judgment **(ECF No. 20)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that Harden's emergency motion for injunctive relief **(ECF No. 52)** be **DENIED**.

Dated: September 15, 2020               s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                        United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2020.

s/Eddrey O. Butts                     <br>
EDDREY O. BUTTS<br>
Case Manager